UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Mark Blasko,

 et al.,

  Plaintiffs,

v.

Case No. 2:08-cv-01105
Judge Michael H. Watson

Petland, Inc.,

 et al.,

  Defendants.

## OPINION AND ORDER

This case concerns a failed pet store franchise. Plaintiffs bring this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Plaintiffs also assert state law claims for fraud, breach of contract, breach of implied contract, negligent misrepresentation, and breach of implied and express warranties. Petland Inc. ("Petland") asserts a counterclaim against plaintiff for liquidated damages under the franchise agreement. (Doc. 32). Plaintiffs move to dismiss Petland's counterclaim for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 36). For the following reasons, the Court denies plaintiffs' motion to dismiss.

### I. Facts

The Court derives the following facts from Petland's counterclaim.

Defendant/counterclaim plaintiff Petland is an Ohio corporation with its principal place of business in Chillicothe, Ohio. Plaintiff/counterclaim defendant Bow Wow Meow, LCC ("BWM") is an Indiana limited liability company with its principal place of business in Hamilton County, Indiana. Plaintiff/counterclaim defendant Mark Henry Blasko resides in Indiana, and operated a Petland retail store in Hamilton County, Indiana.

Petland has developed a format for operating retail stores specializing in the sale of pets and pet products. Petland operates such stores under its registered trademark and trade name, and grants franchises to others to do the same.

On October 7, 2005, Blasko entered into a franchise agreement with Petland which granted an exclusive right to Blasko to operate a Petland store in Hamilton County, Indiana. The franchise agreement provided that Blasko would pay Petland a monthly royalty fee of four and one-half percent of gross revenues generated by the operation of the Petland store. The parties agreed the franchise agreement would be governed by Ohio law, and that any lawsuit relating to the agreement must be brought in Federal District Court or state court in Columbus, Ohio. The term of the franchise agreement was twenty years. On May 25, 2006, Blasko executed an agreement to assign the franchise agreement to BWM.

Petland avers that it performed all of its obligations under the franchise agreement.

BWM became delinquent on the monthly royalty payments to Petland. Eventually, BWM ceased doing business at the Hamilton County, Indiana location. For this reason, on September 29, 2008, Petland sent BWM and Blasko a notice of termination of the franchise agreement.

The franchise agreement contains a stipulated damages provision. The agreement provides: "If, prior to the end of the term hereof, Franchisor terminates this Agreement . . . in addition to any other remedies which Franchisor may have hereunder or at law or in equity, Franchisee agrees to pay Franchisor as liquidated damages an amount equal to Damages (as defined below)." The franchise agreement defines "Damages" as follows:

> Damages means the sum of amounts of the Average Monthly Royalty (as defined below) for each month in the Adjusted Remaining Term (as defined below) calculated for present value using an interest rate of eight percent (8%) per annum. "Average Monthly Royalty" means the average

monthly royalty required to be paid by Franchisee to Franchisor during the twenty-four months prior to the effective date of termination (or during the number of months between the date when the Franchised Business opened for business and the effective date of termination, if fewer than twenty-four months). "Adjusted Remaining Term" means the lesser of (a) one-half of the term remaining under the Franchise Agreement, or (b) five (5) years. Franchisee shall pay Damages to Franchisor within thirty (30) days following the effective date of the termination of this Agreement.

In addition, the franchise agreement states "[t]he parties have expressly bargained for [the agreed damages provision] as an essential part of the consideration for this agreement and agree that the calculation of the Damages as provided under this section is compensatory and not a penalty." Blasko separately initialed the agreed damages provision in addition to signing the franchise agreement.

Petland asserts that Blasko and BWM owe it $214,165.19 in liquidated damages.

## II. Motion to dismiss

A claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted).

A court must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked

assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557. Thus, "something beyond the mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557-58 (internal citations omitted).

### III. Discussion

Blasko and BWM seek dismissal of Petland's liquidated damages claim on the ground that the agreed damages provision in the franchise agreement is an unenforceable penalty under Ohio law.

The learned Justice J. Craig Wright set forth and thoroughly discussed the principles governing stipulated damages provisions in *Lake Ridge Academy v. Carney*, 66 Ohio St. 3d 376, 380-82 (1993). In *Lake Ridge Academy*, the defendant enrolled his son in the plaintiff private school. Under the contract between the parties, the defendant had an unconditional obligation to pay charges for tuition, books and supplies for the full academic year. The agreement provided that there would be no refund notwithstanding the "absence, withdrawal, or dismissal" of the student. The contract also contained a provision that allowed the defendant to cancel the agreement if he notified the school in writing by August 1.

August 1 passed and the plaintiff school had not received a notice of cancellation from the defendant.[1] The school did, however, receive a cancellation notice from the defendant on August 14. The letter was dated August 1, but the envelope in which it was sent was postmarked August 7. The school demanded payment in full pursuant to the agreement, and the defendant refused to pay. A lawsuit followed.

The trial court in *Lake Ridge Academy* found in favor of the defendant on the

---

[1] The Court notes that the defendant in *Lake Ridge Academy* was an attorney.

basis that he had substantially complied with the cancellation provision. The court of appeals reversed, holding that time was of the essence in the contract.

The Ohio Supreme Court affirmed, albeit on different grounds. The court concluded that the concepts of substantial compliance and time is of the essence were inapposite. *Lake Ridge Academy*, 66 Ohio St. 3d at 378-79. Rather, likening the agreement to an option contract, the court held that the defendant's right to unilaterally repudiate the agreement expired on August 1. *Id.* at 379-80.

The court next considered the enforceability of the stipulated damages provision which required the defendant to pay for tuition, books and supplies for the entire academic year. Justice Wright began his analysis by acknowledging the fundamental right to contract freely. *Id.* at 381. Nonetheless, public policy may limit the freedom of contract. *Id.* For example, when a stipulated damages provision constitutes a penalty, public policy precludes its enforcement. *Id.* Parties may, however, provide in advance for liquidated damages to be paid in the event of a breach "'as long as the provision does not disregard the principle of compensation.'" *Id.* (quoting 3 Restatement (Second) of Contracts § 356, cmt. a (1981)). Whether stipulated damages are punitive, and therefore unenforceable, or liquidated, and therefore enforceable, is often difficult to determine. *Id.*

In Ohio, the test for determining whether a stipulated damages provision is enforceable is as follows:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty if the damages would be (1) uncertain as to the amount and difficult of proof, and if (2) the contract as a whole is not manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

*Id.* at 382 (quoting *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St. 3d 27, 28 (1984)

(syllabus ¶ 1) (quoting *Jones v. Stevens*, 112 Ohio St. 43, 45 (1925) (syllabus ¶ 2))); *see In re Graham Square*, 126 F.3d 823, 829-30 (6th Cir. 1997) (applying same three-part test). Applying this test, the court in *Lake Ridge Academy* concluded that the agreement's stipulated damages were liquidated and enforceable. 66 Ohio St. 3d at 382.

The court in *Lake Ridge Academy* first examined whether damages were "uncertain and difficult of proof." It noted that, as established by trial testimony, the plaintiff school engaged in a long budgeting process that was "often an uncertain science." *Id.* at 382-83. The court therefore found that the school would have been unable to calculate precise damages resulting from the loss of one student's tuition. *Id.* at 383.

The court in *Lake Ridge Academy* next considered whether the contract was unconscionable or unreasonable. It explained "[t]he crucial question is whether 'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *?'" *Id.* (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). The court observed that the defendant was a lawyer and businessman who frequently dealt with contracts. *Id.* It also noted that the stipulated damages clause was printed on the front of the one-page contract in the same size type as the other provisions. Moreover, the damages provision was written in legible, plain English. *Id.* Based on these facts, the court concluded that the agreement was not unconscionable. *Id.*

In addition, the defendant in *Lake Ridge Academy* had five months within which to cancel the agreement. Furthermore, as the beginning of the school year approached, and the school's financial commitments became more firm, it was reasonable to assume that by August 1 the school was relying on full payment of

tuition. *Id.* On those bases, the court found that the contract as a whole was not unreasonable. *Id.* The court also concluded that full tuition was not disproportionate to the school's actual damages. *Id.* at 383-84.

Lastly, the *Lake Ridge Academy* court examined whether the contract was consistent with the conclusion that it was the intention of the parties that damages in the agreed amount would be the remedy for the breach of the agreement. *Id.* at 384. The court found that the language of the contract was clear, and noted that the stipulated damages provision appeared in full-size print immediately above the signature lines. The court concluded that in those circumstances the stipulated damages provision represented the parties' intent. *Id.* Based upon these findings, the court in *Lake Ridge Academy* held that the stipulated damages were liquidated and not a penalty. *Id.* at 382.

The Court will proceed to apply the three-prong test set forth in *Lake Ridge Academy* to the instant case. In doing so, the Court is mindful that its decision is not based upon evidence adduced at a trial; rather, the inquiry is limited to whether Petland has plausibly pleaded a claim for liquidated damages.

The franchise agreement is attached to the counterclaim and is incorporated by reference. Countercl. (Doc. 32) ¶ 5. The franchise agreement provides that "if this Agreement is terminated prior to the expiration of the term, the damages that will be incurred by Franchisor are certain to occur, but the amount of such damages is difficult to measure with precision." This statement, which is deemed part of the counterclaim, satisfies the first prong of the *Lake Ridge Academy* test from a pleading standpoint. The franchise agreement further provides that "the amount of Damages . . . is a reasonable approximation given the circumstances and the expectations of the parties." Moreover, the franchise agreement states that "[t]he parties have expressly bargained for this sub-section 17(g)(iv) as an essential part of the consideration for this Agreement

and agree that the calculation of Damages as provided under this section is compensatory and not a penalty." In addition, the agreed damages provision is written in reasonably clear English and in the same size type as the other provisions. Lastly, the agreed damages provision was separately initialed by Mark Blasko. The Court finds that these averments satisfy the second and third prongs of the *Lake Ridge Academy* test for purposes of pleading. In sum, the Court concludes that Petland's counterclaim sufficiently pleads a plausible claim for liquidated damages.

This is not to say that the Court finds as a matter of law at this juncture that the agreed damages provision is liquidated and not a penalty. In this sense it is notable that the *Lake Ridge Academy* decision relied, in part, on *trial testimony* concerning the school's budgeting process. *See* 66 Ohio St. 3d at 382-83. Here, the parties will be afforded the opportunity to engage in discovery, and evidence outside the pleadings and the agreement may yet demonstrate at the summary judgment phase, or at trial, that the agreed damages provision is an unenforceable penalty. For example, evidence may establish that damages for breach were not, in fact, uncertain when the parties entered the franchise agreement, or that the amount of liquidated damages is disproportionate to Petland's actual damages.

## IV. Disposition

For the above reasons, the Court **DENIES** BWM and Blasko's motion to dismiss. (Doc. 36).

The Clerk shall remove Doc. 36 from the Court's Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

/s/ Michael H. Watson
**MICHAEL H. WATSON, JUDGE**
**United States District Court**